Case 1:20-cv-00190   Document 43   Filed on 01/28/22 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
January 28, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAMON ALBERTO GONZALEZ, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-190 |
| | § | |
| BOBBY LUMPKIN, | § | |
|     Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On November 13, 2020, Petitioner Ramon Alberto Gonzalez[1] filed a petition for a writ of habeas corpus by a person in state custody, pursuant to 28 U.S.C. § 2254. Dkt. No. 1.

On March 19, 2021, Respondent Bobby Lumpkin ("the State") timely filed a response to the petition. Dkt. No. 17.

After reviewing the record and the relevant case law, it is recommended that Gonzalez's petition be dismissed as untimely filed, or alternatively, denied as meritless.

**I. Background**

    **A. Factual Background**

On direct appeal, the Thirteenth District Court of Appeals of Texas made specific factual findings. Quiroga v. State, No. 13-16-00470-CR, 2017 WL 6545792 (Tex. App. Dec. 21, 2017). As provided by law, the court sets forth and adopts those findings.[2] Thus, all of the facts, unless otherwise indicated, are quoted from the state Court of Appeals decision, changing only the formatting.

---

[1] Gonzalez was convicted by the State of Texas under the name Ramon Alberto Gonzalez Quiroga. This case was filed under the name Ramon Alberto Gonzalez. The Court will refer to him interchangeably as Gonzalez and Quiroga.

[2] Any factual findings made by the state court are "presumed to be correct," unless the petitioner can show "by clear and convincing evidence" that they were incorrect. Norris v. Davis, 826 F.3d 821, 827 (5th Cir. 2016) (citing 28 U.S.C. § 2254(e)(1)). Gonzalez has raised no such challenge. Accordingly, the Court adopts the factual findings of the state court.

1

In August 2013, Brownsville police responded to a residence on Sandia Street to find 51–year-old [Servando] Betancourt's lifeless body lying flat on the floor of his home, beaten and bloodied. Police observed that the home was in disarray, appeared ransacked, and showed, what one detective labeled, a "violent crime scene." In their investigation, police discovered that one of Betancourt's vehicles had recently crossed into Matamoros, Mexico. With the help of U.S. Immigration and Customs Enforcement, police identified the driver of Betancourt's vehicle as Federico Hernandez. Police met with Hernandez and Hernandez turned over Quiroga's name as an individual with knowledge of what happened to Betancourt.

Quiroga, age 19 in 2013, met with police days after the murder for a round of questioning that lasted approximately one-and-a-half hours. During the videotaped interview that was played to jurors, Quiroga waived his Miranda rights and admitted to police that he knew Betancourt[3] for approximately three years, but denied any involvement in his death. Later in the interview, Quiroga changed his story and told police that the day of the murder, Betancourt picked up Quiroga and his brother-in-law Ricardo Mendoza at their home and took them back to Betancourt's home.

According to Quiroga, Betancourt and Mendoza had pre-arranged to have a sexual encounter with each other at Betancourt's home. Quiroga denied that he ever took part in any sexual encounters with Betancourt, although he knew that Betancourt was homosexual. Quiroga testified that once they arrived at Betancourt's home on Sandia Street, the three drank alcohol and consumed illicit drugs. Quiroga told police that Betancourt and Mendoza began engaging in sexual intercourse in another room when Mendoza suddenly began choking Betancourt with an unknown object. Quiroga stated that he then heard lots of "bashing and smashing." After the struggle with Betancourt ended, Quiroga helped Mendoza load a vehicle with some of Betancourt's belongings and drove the car away from Betancourt's home. Quiroga told police that he "knew" that Mendoza was going to kill

---

[3] Throughout the interview Quiroga refers to Betancourt as "Junior." [footnote original to state court decision].

Betancourt prior to going to Betancourt's home. Lastly, Quiroga told police that he later burned the clothes he wore that day and provided police with a buccal swab of his DNA.

Hernandez, age 22 at the time of trial, testified that he had known Quiroga and his family since his freshman year in high school. Hernandez told jurors that although he and the Quirogas were not related, they treated Hernandez like a member of the family, and he lived with the Quirogas while attending high school. At the time, Mendoza also lived with the Quirogas. Hernandez recalled a conversation that took place in August 2013 between Mendoza and Quiroga that Hernandez overheard. Hernandez stated that Mendoza and Quiroga discussed a plan to lure Betancourt into a sexual encounter, and while doing that, Mendoza would "get [Betancourt] from the back with the cord" and "choke him from the back." Hernandez testified that they discussed making the scene look like an accident. According to Hernandez, Mendoza and Quiroga invited Hernandez to join them at Betancourt's home, but he declined.

Hernandez next recalled that Quiroga and Mendoza returned to their home later that evening in Betancourt's car, and Quiroga asked Hernandez to take the car across the border to Matamoros, Mexico. Hernandez complied with Quiroga's request, and when Hernandez returned to the United States on foot, Quiroga picked him up near the international bridge. Hernandez testified that after Quiroga picked him up, Quiroga repeatedly spoke to himself and asked God to forgive him. Hernandez stated that Quiroga later admitted to Hernandez that he and Mendoza had "messed [Betancourt] up pretty bad." Later, Quiroga and Mendoza asked Hernandez to pawn a television that they had taken from Betancourt's home. Hernandez again complied with their request and pawned the television for $400. Of the $400, Quiroga and Mendoza gave Hernandez $100. Hernandez also aided Brownsville police in locating the site where Quiroga and Mendoza allegedly burned their clothes and shoes after Betancourt's murder.

Dr. Elizabeth J. Miller, who serves as Cameron County's forensic pathologist, testified that she performed the autopsy on Betancourt's body. Dr. Miller observed that Betancourt's body revealed an abrasion associated with a contusion on his top left shoulder, a "full thickness" laceration on the top portion of his scalp, and his neck had a ligature

mark around it. Dr. Miller opined that Betancourt's cause of death was blunt-force trauma, sharp-force trauma, and ligature strangulation. Dr. Miller further opined that the manner of death was homicide.

The jury found Quiroga guilty as charged, and the trial court assessed punishment at life imprisonment without parole.[4]

### B. State Direct Appeal

Gonzalez timely filed a notice of direct appeal. On appeal, he raised a single issue: that the trial court erred when it refused to include a jury instruction for the lesser-included charge of robbery. Dkt. No. 16-20, p. 2228.[5] The crux of Gonzalez's argument was that he testified that he did not intend to murder Bentancourt. Id., p. 2234. Because Gonzalez was indicted for "intentionally" causing Bentancourt's death, the Court should have instructed the jury that it could find him guilty of the lesser-included charge of robbery. Id.

On December 21, 2017, the Court of Appeals of Texas rejected this argument. Quiroga, 2017 WL 6545792, *3. The state appellate court noted that Gonzalez testified that he had no idea what Mendoza was going to do and had no plans to either murder or rob Bentancourt. Id. Under Texas law, "if a defendant presents evidence that he committed no offense, or presents no evidence, and there is no evidence otherwise showing that the defendant is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required." Id. (citing Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001)). Because there was "no evidence [that] would permit a jury rationally to find that Quiroga was guilty only of robbery," the conviction was affirmed. Id.

On March 20, 2018, Gonzalez filed a petition for discretionary review with the Texas Court of Criminal Appeals. Dkt. No. 16-28, p. 2280. In that petition, he, again, raised a single claim regarding the trial court's refusal to issue an instruction on the lesser-included charge of robbery. Id., p. 2287. On May 9, 2018, the Court of Criminal Appeals

---

[4] The direct quotation of facts, taken from the Thirteenth District Court of Appeals, ends here.

[5] The page numbers refer to the numbers Bates-stamped at the bottom of the page.

"refused" the petition. Dkt. No. 16-34, p. 2313. In other words, the Court of Criminal Appeals declined to hear the case. TEX. CODE CRIM. PROC. § 44.45(b)(6).

### C. State Habeas Proceedings

On September 25, 2019, Gonzalez filed an application for writ of habeas corpus in the Court of Criminal Appeals. Dkt. No. 16-39, p. 2327. In that application, he made four claims: (1) his trial counsel stated in opening argument that Gonzalez was a thief, and not a murderer, which undercut his defense that he was innocent of any wrong-doing; (2) trial counsel was ineffective for failing to give the trial judge caselaw to show that he was entitled to a jury instruction on a lesser-included charge of robbery; (3) trial counsel was ineffective for failing to object to the prosecutor's statement in closing arguments that Hernandez was a credible witness; and (4) trial counsel was ineffective for failing to object to the prosecutor's statement in closing arguments that referred to community expectations. Id.

On January 29, 2020, the Court of Criminal Appeals remanded the case to the trial court to make findings of fact and conclusions of law as to whether counsel was ineffective. Dkt. No. 16-39, p. 2388.

On August 18, 2020, the 103rd District Court — after holding an evidentiary hearing — issued a recommendation, finding that all of Gonzalez's claims were meritless. Dkt. No. 16-42, pp. 2413-31.

On October 21, 2020, the Court of Criminal Appeals denied Gonzalez's application "without written order on [the] findings of [the] trial court without hearing and on the Court's independent review of the record." Dkt. No. 16-47, p. 2498. The denial indicated that the Court of Criminal Appeals rejected the petition on substantive grounds, rather than on procedural grounds. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (indicating that a "denial" signifies adjudication on the merits, while "dismissal" reflects a claim declined on grounds other than upon the merits).

### D. Federal Habeas Proceedings

On November 13, 2020, Gonzalez filed his petition in the instant case. Dkt. No. 1. Gonzalez raised the same four claims that he made in the state courts, namely that (1) his

5

trial counsel stated in opening argument that Gonzalez was a thief, and not a murderer, which undercut his defense that he was innocent of any wrong-doing; (2) trial counsel was ineffective for failing to give the trial judge caselaw to show that he was entitled to a jury instruction on a lesser-included charge of robbery; (3) trial counsel was ineffective for failing to object to the prosecutor's statement in closing arguments that Hernandez was a credible witness; and (4) trial counsel was ineffective for failing to object to the prosecutor's statement in closing arguments that referred to community expectations. Id.

On November 16, 2020, the State was ordered to respond to the petition. Dkt. No. 4.

On March 19, 2021, the State timely filed a response to the petition, arguing that Gonzalez's petition was not timely filed and cannot be saved by equitable tolling. Dkt. No. 17.

On July 16, 2021, Gonzalez filed his reply brief. Dkt. No. 22. Gonzalez argues that he is entitled to equitable tolling. He stated that after the Court of Criminal Appeals denied his petition for discretionary review on direct appeal, he "did not waste time or hesitate with preparing his State Habeas application." Dkt. No. 22, p. 3. He stated that once his habeas petition was completed, he "needed copies for proof of his application," but that TDCJ does not offer inmates access to copying services. Id. Gonzalez states that he found a non-prisoner, Emma "Sara" Woods, who agreed to make copies and mail one to the Cameron County District Clerk's Office on his behalf. Id.

Woods, in a sworn affidavit, claims she mailed the habeas petition on July 3, 2019. Dkt. No. 22, p. 8. When Woods called to inquire on the status of the petition, the Cameron County District Clerk's Office informed her that they did not receive the petition. Id. Gonzalez argues that he is entitled to equitable tolling because he showed reasonable diligence and was prevented from timely filing by matters outside of his control.

On September 28, 2021, the Court ordered the State to file a supplemental brief, addressing whether Gonzalez was entitled to equitable tolling and what the standard of review was for the Court of Criminal Appeal's statement that it denied Gonzalez's

application "without written order on [the] findings of [the] trial court without hearing and on the Court's independent review of the record." Dkt. No. 24.

On December 13, 2021, the State timely filed its supplemental brief. Dkt. No. 35. The State argued that Gonzalez is not entitled to equitable tolling because the situation with the mail does not constitute extraordinary circumstances and because he did not diligently pursue his rights. Id. As to the second question, regarding the standard of review for the Texas Court's language, the State argued that in § 2254 cases, federal courts review only the final decision of the state courts and not the reasoning that was employed. Id.

On December 27, 2021, Gonzalez filed a motion for an extension of time to file a response to the supplemental briefing. Dkt. No. 36. On December 28, 2021, the Court granted the motion, but warned Gonzalez that "[n]o further extensions of time shall be granted." Dkt. No. 37. On January 27, 2022, Gonzalez filed a second motion for an extension of time to respond. Dkt. No. 40. The following day, the Court denied the motion, on the grounds that Gonzalez had already been warned that he would not receive any further extensions. Dkt. No. 41.[6]

## II. Applicable Law

### A. Section 2254

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner convicted in a state court may challenge his conviction to the extent it violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, only violations of the United States Constitution or federal law are subject to review by this Court under § 2254.

In conducting such a review, a federal district court:

> may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

---

[6] Moreover, the facts of this case are straight-forward and that it is exceedingly unlikely that any briefing offered by Gonzalez would have altered the ultimate recommendation.

unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law'; or (2) 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and reaches an opposite result.'" Simmons v. Epps, 654 F.3d 526, 534 (5th Cir. 2011) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011).

"The state court makes an unreasonable application of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts'; or (2) 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Simmons, at 534 (quoting Williams, at 407).

Additionally, the AEDPA requires that federal law be "clearly established" "as articulated by the Supreme Court." Woodfox v. Cain, 609 F.3d 774, 800 n. 14 (5th Cir. 2010). "[A] decision by . . . [the Fifth Circuit] . . . or one of our sister circuits, even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." Salazar v. Dretke, 419 F.3d 384, 399 (5th Cir. 2005).

Furthermore, "whether the state court's decision involved an unreasonable application of Supreme Court precedent does not depend solely on the state habeas court's actual analysis." Evans v. Davis, 875 F.3d 210, 216 (5th Cir. 2017). The Court must consider "not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon." Id. (citing Neal v. Puckett, 286 F.3d 230, 244–46 (5th Cir. 2002) (en banc) (per curiam)).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, 562 U.S. at 102–03 (2011) (internal quotation marks omitted).

### B. Timeliness

A petitioner has a one year "period of limitation" in which to file a § 2254 petition. 28 U.S.C. § 2244(d)(1). That period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

8 U.S.C. § 2244(d)(1)(A)-(D).

This one-year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2).

Further, the limitations period is not jurisdictional and may be equitably tolled. Holland v. Florida, 560 U.S. 631, 645 (2010). For equitable tolling to excuse the late filing of a petition, the petitioner must show that he has been "pursuing his rights diligently" and that "some extraordinary circumstance" prevented timely filing. Id. at 649.

### III. Analysis

In analyzing the claims raised by Gonzalez, a basic premise is that allegations by pro se litigants must be afforded liberal construction to ensure that their claims are not unfairly dismissed, because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S.

519, 520 (1972). That latitude, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981). In this case, even allowing for the latitude due a pro se, this petition is meritless and should be denied.

### A. Timeliness

Gonzalez had one year in which to file his § 2254 petition in this Court. As relevant here, Gonzalez had one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On May 9, 2018, the Court of Criminal Appeals "refused" the petition for discretionary review on direct appeal. Dkt. No. 16-34, p. 2313. Gonzalez did not file a petition for writ of certiorari with the Supreme Court. Thus, his conviction became final on August 7, 2018, "when he failed to file a petition for writ of certiorari within ninety days" of the Court of Criminal Appeals refusing the petition. Ford v. Davis, 910 F.3d 232, 235 (5th Cir. 2018) (citing SUP. CT. R. 13.1 and Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir. 1998)).

By the plain language of § 2244(d)(1)(A), Gonzalez had until August 7, 2019, to file a habeas petition in Federal court.

The one-year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2). However, this tolling is unavailable if the state habeas petition is not filed until after the period of limitation has expired. Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000). Gonzalez did not file his state habeas petition until September 25, 2019, which was beyond the statutory deadline.[7] Accordingly, the petition was untimely filed. That conclusion requires the Court to consider whether equitable tolling is appropriate.

---

[7] Gonzalez is not entitled to the "prison mailbox" rule because he used a non-attorney intermediary to file his pleadings. Dkt. No. 22, p. 8; Dison v. Whitley, 20 F.3d 185, 187 (5th Cir. 1994) (prison mailbox rule does not apply when prisoner sends filings to outside party rather than directly to the Court).

10

To avail himself of equitable tolling, Gonzalez must establish "extraordinary circumstances" that warrant the tolling of the limitations period. Holland, 530 U.S. at 649. Gonzalez bears the burden of establishing that equitable tolling is appropriate. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000).

To merit equitable tolling, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006). Gonzalez asserts that the first petition was either lost by the Cameron County District Clerk's Office or by the Postal Service and that if the statutory deadlines were calculated based on when his first petition was mailed, his petition would be considered timely filed.

The Fifth Circuit has stated that "when a prisoner asserts that his ability to file a federal habeas petition has been affected by a state proceeding, we will examine the facts to determine whether the prisoner is entitled to equitable tolling under § 2244(d)(1)." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). "Equitable tolling is appropriate when an extraordinary factor beyond the plaintiff's control prevents his filing on time." Felder v. Johnson, 204 F.3d 168, 174 (5th Cir. 2000). This does not, however, absolve Gonzalez of his duty to act with "diligence and alacrity" in pursuing habeas relief. Id. (quoting Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000)). The key consideration is whether the petitioner acted with diligence both before and after receiving the belated notification. Id.

The Court concludes that Gonzalez is not entitled to equitable tolling. As an initial matter, he did not diligently pursue his rights. Gonzalez's conviction became final on August 7, 2018, and by his own admission, he did not file the state habeas petition through Woods until July 3, 2019. He waited nearly eleven months after his conviction became final to begin his collateral attack. He was not diligently pursuing his rights. See Howland v. Quarterman, 507 F.3d 840, 846 (5th Cir. 2007) (prisoner was not diligent in pursing his rights when he "did not even attempt to file his state application until over ten months after his conviction became final").

11

Furthermore, Gonzalez blames the delay on his needing to have copies made of his petition and that the prison did not allow him access to a photocopier.  He never explains why he could not have simply made a hand-written copy or typed out a second copy of his petition.

Under the circumstances presented here, the Court believes that Gonzalez is not entitled to equitable tolling, making his petition untimely filed.  Even if the Court were to find that equitable tolling is appropriate, Gonzalez's petition is still meritless.

**B. Objective of Defense**

Gonzalez asserts that his counsel violated his Sixth Amendment right to determine the objective of his defense.  This claim should be denied.

At the outset, the Court notes, in the § 2254 context, it must determine whether the last state court decision unreasonably applied Supreme Court precedent or was based upon an unreasonable application of the facts. 28 U.S.C. § 2254(d). In this case, the last state court decision was the Court of Criminal Appeals decision, denying Gonzalez's habeas petition application, which denied it on the basis of the state trial court's findings as well as its own independent review of the record.  While the Court can review the findings made by the state trial court, the Court of Criminal Appeals did not provide a rationale behind its denial, which was based upon its own independent review of the record.

Because the Court of Criminal Appeals "independent review" does not precisely lay out why it denied the petition, the Court must "gather the arguments and theories that could support the state court's ultimate decision and ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court precedent." Thomas v. Vannoy, 898 F.3d 561, 568-69 (5th Cir. 2018) (cleaned up).[8]  Thus,

---

[8] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3, 234 Md. App. 742, 174 A.3d 493 (Md. Ct. Spec. App. Dec. 1, 2017); see also Brownback v. King, — U.S. —, 141 S. Ct. 740 (2021) (using "cleaned up").

12

the Court can consider whether there are any arguments or theories that support the denial of the petition.

In her opening argument, Gonzalez's trial counsel stated that, "The evidence is going to show the following: that my client, if he did anything, he stole from that man [Bentancourt] after someone killed him; okay." Dkt. No. 16-7, p. 450. She stated that Bentancourt was known to be someone who would give beer, marijuana, and cocaine to minors. Id., pp. 449-50. She went on to argue that Bentancourt invited Gonzalez and Mendoza over to his house that day; and that Mendoza wanted to know if Bentancourt had any drugs. Id., p. 451. Counsel stated that the evidence would show that Gonzalez replied, "You do what you want to do, not me." Id., p. 452. Counsel stated that when Bentancourt and Mendoza began engaging in sexual activity, he left the home and walked outside and had nothing to do with the murder. Id.

Counsel did admit the following in the opening argument:

> "The evidence is going to show my client did, once [Bentancourt] was hurt bad, because he was at that time, okay, did take the TV. He's a thief. It doesn't make him a killer, the evidence is going to show; all right. And he deserves to be punished as a thief, but it doesn't make him a killer."

Dkt. No. 16-7, p. 456.

Gonzalez claims that he saw the objective of his defense as making it clear "that he was not guilty of any action that related [to] the murder or robbery of Bentancourt." Dkt. No. 1. He claims that counsel's admission were contrary to his objective of admitting nothing. Id.

The Supreme Court has held that "[w]hen a client expressly asserts that the objective of '<u>his</u> defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." McCoy v. Louisiana, — U.S. —, 138 S. Ct. 1500, 1509 (2018) (emphasis original). This is in contrast to cases where the defendant never asserts any such objective; the Sixth Amendment is not violated if the client never disavows or protests a lawyer's decision to strategically admit guilt. Florida v. Nixon, 543 U.S. 175, 188 (2004). Thus, the Sixth Amendment is violated only

when the defendant specifically instructs counsel not to concede any portion of guilt and counsel disregards the client's wishes. McCoy, 138 S. Ct. at 1504. Indeed, in McCoy, the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt," and his objections were noted on the record. McCoy, 138 S. Ct. at 1505.

As the Supreme Court has stated, albeit in a slightly different context, the Court should not grant collateral relief based solely on "post hoc" assertions from a defendant about his true intentions during trial. Lee v. U.S., — U.S. —, 137 S. Ct. 1958, 1967 (2017). Rather, courts "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id.

Gonzalez has produced no contemporaneous evidence to demonstrate that he clearly expressed to his trial counsel that he did not wish to concede any guilt. Indeed, trial counsel filed a brief, as part of the state habeas proceedings, denying that Gonzalez ever made such statements. Dkt. No. 16-42, pp. 2403-04. Faced with the competing versions of events between Gonzalez and counsel, the state courts chose to credit the version of events proffered by counsel. In fact, the trial court considered the evidence at a habeas evidentiary hearing and credited counsel's version of events. Dkt. No. 16-42, pp. 2413-31. The Court of Criminal Appeals adopted the findings of the trial court. Dkt. No. 16-47, p. 2498. The Court must defer to the state court's credibility findings. See Pippin v. Dretke, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts"). As such, the state court's determination was not unreasonable and this claim should be denied.

**C. Lesser-Included Offense**

Gonzalez asserts that counsel was ineffective for failing to give the trial judge caselaw to show that he was entitled to a jury instruction on a lesser-included charge of robbery. This claim should be denied.

Under Texas law, a defendant shall receive a jury instruction regarding a lesser-included offense if: (1) "the requested charge is for a lesser-included offense of the charged

14

offense; and (2) there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense." Guzman v. State, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). The prosecution conceded on direct appeal that robbery is a lesser-included offense of felony murder. Quiroga, 2017 WL 6545792, at *3. Thus, the focus is on whether there is some evidence that if Gonzalez was guilty of anything, it was only robbery.

Gonzalez testified at trial that he had no idea that Mendoza planned to rob and kill Betancourt and that he did not aid Mendoza in any way and did not take any items from Mendoza. Quiroga, 2017 WL 6545792, at *3. If this testimony was to be believed, then Gonzalez was guilty of no crime. The other evidence at trial – Gonzalez's videotaped confession to police and Hernandez's testimony at trial – indicated that Gonzalez actively participated in the plan to rob and kill Mendoza. Id. If this testimony was to be believed – which it apparently was, given the jury's verdict – then Hernandez would be considered guilty of both robbery and felony murder. Thus, the facts of the case showed that this was an all-or-nothing proposition: either Gonzalez was an innocent man in the wrong place at the wrong time or that he was guilty of premeditated murder and robbery. Simply stated, there was no version of events where Gonzalez was only guilty of robbery, but not guilty of murder.

His counsel recognized this dichotomy and stated in the state habeas affidavit that Gonzalez's trial testimony denying any involvement in the commission of the crime "impaired his right to a lesser-included offense." Dkt. No. 16-42, p. 2411.[9] Counsel was not ineffective for failing to request a lesser-included instruction of robbery when Gonzalez was not entitled to such an instruction. "An attorney's failure to make meritless arguments is not ineffective lawyering." U.S. v. Jimenez-Ramirez, 569 F. App'x 289, 290 (5th Cir. 2014) (citing Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002)). The state court was not unreasonable in denying relief and this claim should be denied.

---

[9] The Court notes that Gonzalez's claim, that his lawyer should have admitted nothing and that his lawyer should have sought out a lesser included offense, appear to be mutually exclusive with each other.

**D. Bolstering**

Gonzalez argues that trial counsel was ineffective for failing to object to the prosecutor's statement in closing arguments that Hernandez was a credible witness. This claim should be denied.

Under Texas law, it is generally improper for a prosecutor to vouch for the credibility of a witness during closing argument. Carter v. State, 650 S.W.2d 843, 847 (Tex. App. 1982). However, "if defense counsel attacks a witness's credibility, it is permissible for the prosecutor to 'stick up' for its witness in answer to the defense argument." Weinberger v. State, 2011 WL 652847, at *6 (Tex. App. 2011).

During closing arguments, Gonzalez's counsel attacked Hernandez's credibility, stating that Hernandez "drove the car across to Mexico to leave it," and pawned Mendoza's possessions. Dkt. No. 16-11, p. 1636. She opined that Hernandez "did a hundred times more than [Gonzalez] ever did and now he's sitting under a palm tree in Florida." Id. She implied that Hernandez pointed the finger at Gonzalez in order to save himself, stating that Hernandez was only thinking about himself. Id.

In rebuttal, the prosecutor argued that Hernandez was "a very credible witness" because "he has nothing to gain and a whole lot to lose" by lying. Dkt. No. 16-11, p. 1665. In other words, the prosecutor was arguing that Hernandez had no motive to lie about Gonzalez's involvement. The prosecutor was responding to a specific argument advanced by defense counsel. The argument was not impermissible. Weinberger, 2011 WL 652847, at *6. Defense counsel was not ineffective for failing to object because such an objection would have been frivolous. Johnson v. Cockrell, 306 F.3d at 255. The state court was not unreasonable in denying this claim; the Court should likewise deny this claim.

**E. Community Expectations**

Gonzalez argues that trial counsel was ineffective for failing to object to the prosecutor's statement in closing arguments that referred to community expectations. This claim should be denied.

At the end of the closing rebuttal argument, the prosecutor made the following argument:

16

> Folks, I appreciate your help in this case and I thank you for your service, but you are the voice of Cameron County. Do we want this type of person living in our community? Because if you do, well, then, heck, turn him loose. But then if we do turn him loose, we're going to have a community much like they have in Matamoros right now where the cartel is running everything, and we'll have people who are going to go around killing people for no reason at all, because what did [Bentancourt] die for? Just to be a nice guy? He's dead and they're still trashing him. There's no evidence that he was selling drugs to kids. This man was probably a heck of a good man. His picture's around here someplace. Look at his pictures, and they're trashing him. They're blaming everything on Ricardo [Mendoza] because he's not here. Folks, you're the judge. Our community depends on you, and I hope you come back with a verdict of guilty, guilty of capital murder, because [Gonzalez] was involved in this capital murder and he orchestrated the whole thing. Mendoza was probably the brawn, the muscle, but [Gonzalez] was the one who thought it all up. Don't let him do it. Thank you.
> Dkt. No. 16-11, p. 1666.

Under Texas law, the prosecution cannot refer to community expectations for a certain verdict, such as telling the jury that the community expects the defendant to serve life imprisonment. Cortez v. State, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984). However, the prosecution can refer to the community as a plea for law enforcement and a safe community, such as asking the jury to send a message that the defendant's conduct should not be tolerated in the community. Smith v. State, 966 S.W.2d 111, 112 (Tex. App. 1998) (collecting cases). In other words, the prosecution cannot argue that the greater community expects a certain verdict and that the jury should fall in line with those expectations. Id. On the other hand, the prosecution may permissibly argue that the jury would not want to live in a community where the defendant's conduct is excused, tolerated, or celebrated. Id.

The prosecutor's argument clearly fell within the latter category. He argued that the victim was a good man who was killed for no reason and that if Gonzalez was found not guilty, the jurors could find themselves in a violent community where people were murdered for no reason at all. The prosecutor did not ask for a particular punishment or otherwise imply that the greater community expected a particular verdict. He made a plea for the law to be enforced and speculated as to what the community would look like if the

law was not enforced. His argument was permissible under Texas law. Smith, 966 S.W.2d at 112. Defense counsel was not ineffective for failing to make a meritless argument. Johnson v. Cockrell, 306 F.3d at 255. The state court was not unreasonable in denying this claim; the Court should likewise deny this claim.

## IV. Recommendation

It is recommended that Ramon Alberto Gonzalez's petition for writ of habeas corpus by a person in state custody, pursuant to 28 U.S.C. § 2254, be dismissed as untimely filed, or alternatively, denied as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2254 motion to the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). "Importantly, in determining this issue, we view the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Druery v. Thaler, 647 F.3d 535, 538 (5th Cir. 2011) (internal quotations omitted) (citing Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000)). The district court must rule upon a certificate of appealability when it "enters a final order adverse to the applicant." Rule 11, Rules Governing § 2254 Petitions.

After reviewing Gonzalez's § 2254 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Gonzalez's § 2254 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

**B. Notice to Parties**

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting those findings. If the District Judge chooses to adopt such findings without conducting a <u>de novo</u> review of the record, the parties may not attack those findings on appeal, except upon grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on January 28, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge